STOKER, Judge,
concurring.
I concur in the position stated in the majority opinion in this case. In order to emphasize certain points and posit others, I add this concurring opinion.
The only facts before us for consideration concerning the challenged searches are those expressly stipulated to by counsel for the State and the defendant as set out in the majority opinion.
In arson eases in which the accused is the alleged arsonist and is being tried for arson, the constitutional protection against unconstitutional searches and seizures has pertinence in the context of such cases. The arguments of counsel and the majority opinion focus primarily on the legal principles developed in such arson cases. However, this is not an arson case. James Snider is charged in this case with having murdered his mother in her house. Therefore, the searches and seizures in question relate to a murder scene rather than an arson scene. Proof of arson may bear on determining the defendant’s guilt for the crime of murder, but the prosecution here is for murder and not arson. Therefore, in my opinion this case requires a different focus and a different approach.
The holding of the Supreme Court of the United States in Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), indicates that the scope of a search at a homicide scene is broader than that justified by the crime of simple arson. In such cases, for example, the police may search the area for other victims or the killer. As this case is concerned with homicide, I think the following points should be considered.
A most persuasive point made by the majority opinion is the fact that the defendant had no reasonable expectation of privacy in the fire-damaged premises of his mother’s home. Apparently, the defendant was present when authorities arrived to put out the fire but he chose to leave the premises. The authorities became aware that the homeowner was the victim of a homicide and conducted the investigation *754 with that knowledge. In any event, the majority correctly points out that there is no claim that defendant’s bedroom was searched. The only person with a privacy interest in the house and grounds was dead. Any privacy interest she had cannot be asserted in order to suppress evidence which could lead to the conviction of her killer. Such a result would be absurd. In fact, in my opinion, it can be reasonably asserted that, being dead, she could have no legal or constitutional privacy interests. Considerations of decency would lead considerate persons to desire that the privacy of her corpse and private belongings be respected. However, this is not the same thing as holding that a deceased person has constitutionally protected rights.
In Louisiana, in addition to satisfying the constitutional guarantees of the Fourth Amendment of the federal constitution, searches and seizures must pass the test of Article I, Section 5 of the Louisiana Constitution of 1974. The section provides:
“Sec. 5. Right to Privacy
“Section 5. Every person shall be secure in his person, property, communication, houses, papers and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.”
Thus, if defendant, James Snider, is a person “adversely affected” by a search or seizure in violation of that section, he has standing to challenge the constitutionality of the search. If, as asserted above, the deceased mother of Snider had no constitutional privacy interest because she was dead, then there was no violation which could “adversely affect” the defendant. However, even viewed from a broader perspective, and without application of technical interpretations, I would find that James Snider had no privacy interest under this section of the Louisiana Constitution.
In State v. Ragsdale, 381 So.2d 492 (La. 1980), the Louisiana Supreme Court considered the right to privacy of a person for whom the law enforcement authorities held a warrant of arrest who is found in the home of a third person. The Court’s opinion includes the following pronouncement:
“The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. Wilbourn, 364 So.2d 995 (La. 1978); State v. Dupuis, 378 So.2d 934 (La.1979).”
In the factual context of this case it does not seem to me that if James Snider harbored any expectation of privacy at all with reference to his mother’s house, it nevertheless was not of a type which society at large is prepared to recognize as being reasonable. The police were legitimately investigating, not merely suspected arson, but an evident case of homicide. They were investigating in the home of the victim. They certainly had a duty to search and seize evidence of foul play. If exigent circumstances were not present, it seems to me nevertheless that the situation justified the searches and seizures in this case. I can not see that the defendant had any privacy interest at all; but if he did have any, it did not override the interest of the public in establishing the fact and cause of the homicide and the identity of the killer. Not all entries into the houses of third persons unauthorized by warrant “adversely affect” defendants to the extent that suppression of evidence is required by the Louisiana constitutional provision in question. Cf. State v. Johnson, 437 So.2d 350 (La.App. 4th Cir.1983) and State v. Barrett, 408 So.2d 903 (La.1981).