799 So.2d 619 (2001)
STATE of Louisiana, Appellee,
v.
Ronald W. NORMAN, Appellant.
No. 34,868-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
*620 John M. Lawrence, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, William J. Edwards, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, GASKINS and PEATROSS, JJ.
GASKINS, J.
In this out-of-time appeal, the defendant, Ronald W. Norman, appeals his convictions and sentences for felony theft, illegal possession of stolen things, and conspiracy to commit felony theft. On each count, the defendant was ordered to pay a fine of $500.00 and to serve a five-year sentence at hard labor. The sentences, which were ordered to be served concurrently, were suspended and the defendant was placed on supervised probation for five years. For the following reasons, we vacate the convictions and sentences and remand for a new trial.

FACTS
This case involves the alleged theft of a large amount of diesel fuel from Hydro-Walk, a distribution company which occasionally supplied fuel to retail outlets. Hydro-Walk is owned by Ron Walker. The dispatcher was Larry Lawson, and Dale "Bubba" Cramer was a driver. The fuel was allegedly stolen by Lawson, delivered by Cramer and purchased by Petrox, a truck stop owned by Tyrus "Ty" Sibley and managed by the defendant, Ronald W. Norman. Petrox had legitimately purchased fuel from Hydro-Walk in the past. In 1994, Petrox began using another supplier. Sibley spoke to Lawson on several occasions asking him to furnish some stolen fuel. Eventually, Lawson agreed and began delivering loads of stolen fuel to Petrox. Lawson was paid in cash for the deliveries by either Sibley or the defendant. Lawson stated that he had a gambling problem, so he decided to steal the fuel from Hydro-Walk, sell it to Sibley, and use the money to gamble in an effort to recoup his losses and repay Hydro-Walk. He was not successful in this plan. *621 Lawson would call Sibley and ask if he needed a load of fuel. Sibley would tell him when to deliver and which tanks to put the fuel in. Lawson would go to the business the next day and be paid in cash by either Sibley or the defendant.
As the arrangement progressed and Lawson was made a dispatcher at Hydro-Walk, he enlisted Cramer to make the deliveries. Cramer was blind in one eye, and he thought that Hydro-Walk's insurance company would not cover him as a driver if that fact was known. Cramer knew Lawson was aware of the disability and was afraid Lawson might use the information against Cramer if he did not cooperate.
In January 1995, Walker became aware of a shortage in his fuel inventory. Suspecting theft, he contacted the Caddo Parish Sheriff's Office. He also suspected that another delivery would be made the next day. Law enforcement officials set up a stake-out. On the evening of January 13, 1995, they observed Cramer leaving Hydro-Walk with a load of fuel. He delivered it to Petrox. Cramer was arrested and implicated Lawson. Lawson was contacted by the Caddo Parish Sheriff's Office and agreed to voluntarily come to the station. He confessed to stealing the fuel and divulged his arrangement with Sibley. Lawson stated that he had been taking fuel from Hydro-Walk for about a year. He agreed to wear a listening device when he went to Petrox to collect his money. Lawson met with the defendant on January 14, 1995, while sheriff's deputies monitored and recorded the conversation. The two men went into a small building outside the truck stop which was used as an office. As the deputies listened, the defendant counted out cash to pay Lawson. He received $2,800.00 for the load. The defendant and Lawson then discussed a possible increase in the price of fuel from 70 to 80 cents per gallon. Lawson mentioned another individual who might be interested in selling cheap fuel and the defendant expressed interest. They then discussed not talking with each other when anyone else was around. They also discussed whether the employees of the truck stop had ever questioned the presence of Hydro-Walk trucks on the property.
During the course of the discussion, the defendant noticed an unmarked sheriff's car at the truck stop. When the defendant concluded his conversation with Lawson, he went over to the vehicle which was occupied by Deputy Larry Wise. Deputy Wise arrested the defendant.
Lawson pled guilty to felony theft. Cramer was not charged. Sibley was never prosecuted. Instead, Hydro-Walk filed a civil suit against him for recovery of the value of the stolen fuel. The matter was settled.
The defendant was charged with felony theft, illegal possession of stolen things and conspiracy to commit theft. He admitted paying cash to Lawson, but contended that he had no knowledge that the fuel was stolen. He argued that he often paid cash to vendors. He also denied that his statements to Lawson on tape were indicative of a conspiracy to steal fuel. He claimed that, when discussing prices of fuel, he did not know what Lawson was talking about, but went along with the conversation until he could consult with Sibley.
The defendant's trial was held February 26-27, 1996. He was found guilty as charged. On September 6, 1996, the defendant was sentenced to pay a fine of $500.00 and serve five years at hard labor on each conviction, with the sentences to run concurrently. The sentences were suspended and the defendant was placed on supervised probation for five years.
*622 The defendant filed motions for new trial, post verdict judgment of acquittal, and an amended motion for new trial. The motions were denied on September 6, 1996. On that same date, sentence was imposed. On November 12, 1996, the trial court denied the defendant's motion to reconsider his sentence. The defendant then thought his trial counsel was perfecting an appeal. However, no appeal was taken at that time. On March 11, 1998, an order was entered by the trial court showing that the defendant's probation was completed satisfactorily. On March 20, 1998, the defendant received his automatic first offender pardon under La. R.S. 15:572. On September 22, 2000, the defendant was granted an out-of-time appeal. He urged numerous assignments of error. Because we find that an illegal verdict was rendered in this case, and due to the special circumstances presented, we vacate the convictions and sentences and remand for a new trial.

ILLEGAL VERDICT
Among the many assignments of error raised by the defendant, he contends that the convictions of theft of property valued at $500.00 or more and possession of stolen property valued at $500.00 or more are illegal verdicts as a defendant cannot be convicted of both counts. This argument has merit.
La.C.Cr.P. art. 482(A) provides:
A. An indictment for theft may also contain a count for receiving stolen things, and the defendant may be convicted of either offense. When two or more persons are jointly indicted for these offenses, any or all of the persons indicted may be found guilty of either of the offenses charged. The district attorney shall not be required to elect between the two offenses charged.
Under this provision, the prosecution is free to charge both the offense of theft and illegal possession of stolen things. Official Revision Comment (a) to the above article provides:
(a) This article, following Art. 246 of the 1928 Code of Criminal Procedure, provides for a situation where the state is frequently in justifiable doubt as to which crime will be established by the evidence adduced at the trial. A receiver of stolen things (R.S. 14:69) will be guilty of theft (R.S. 14:67), rather than receiving, if it develops that he procured or in any way participated in the stealing of the goods. This article authorizes the charging of these distinct crimes in separate counts. It is for the jury to determine which charge is supported by the evidence; therefore, the article expressly states that the prosecuting officer shall not be required to elect between the two offenses charged.
Charging a defendant with both offenses in this manner does not constitute double jeopardy. State v. Williams, 359 So.2d 115 (La.1978). However, the jury must choose between the two counts and convict on only one count or the other. The defendant cannot be found guilty of both offenses. State v. Britton, 443 So.2d 6 (La.App. 5th Cir.1983). See also State v. Robertson, 386 So.2d 906 (La.1980). To do so would punish a defendant twice for the same conduct and would constitute double jeopardy. The language of La.C.Cr.P. art. 482 is couched expressly in the alternative, and provides that the defendant may be found guilty of either offense, but not both offenses. State v. Williams, supra.
The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Louisiana Constitution *623 of 1974, Art. 1 § 15 contains a similar guarantee. State v. Goodley, 423 So.2d 648 (La.1982). The United States Supreme Court, in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), stated that the guarantee against double jeopardy consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.
Under La.C.Cr.P. art. 482, an accused may not be subjected to multiple prosecutions for the same offense, whether upon conviction or acquittal. In fact, the effect of the article is that there is to be a single prosecution resulting in an acquittal or a single conviction for theft or receiving stolen goods. State v. Williams, supra.
The Double Jeopardy Clause forbids a second trial when the prosecution fails to muster sufficient evidence to convict the defendant in the first proceeding. However, double jeopardy does not preclude the state from retrying a defendant whose conviction is set aside because of judicial error. This reflects a balancing of the defendant's interest in seeing that criminal proceedings against him are resolved once and for all in a single prosecution against society's valued interest in enforcement of its criminal laws. United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); State v. Mayeux, 498 So.2d 701 (La.1986). When a jury renders an illegal verdict, the Fifth Amendment does not bar retrial. State v. Mayeux, supra; State v. Walker, XXXX-XXXXX (La.App. 3d Cir.1/01/01), 778 So.2d 1192. In such cases, it is as if the jury failed to reach a decision. State v. Self, 2000-633 (La.App. 3d Cir.11/14/00), 772 So.2d 337.
In the present case, even though the state properly charged the defendant in the bill of information with both theft and illegal possession of stolen things, the jury was not instructed that it could only convict of one offense or the other, but not both. Further, no objection was made to the jury instructions. In response to the defendant's complaint on appeal as to this issue, the prosecution concedes that the defendant may not be convicted of both theft and illegal possession arising out of the same incident. Because the defendant could not be convicted of both theft and illegal possession of stolen things, the jury verdict as to these two charges must be vacated.
The defendant also claims on appeal that there was insufficient evidence upon which to base his convictions, not only of illegal possession and theft, but also conspiracy to commit theft. It is impossible to tell what the jury's decision might have been on these three charges had correct jury instructions been given. All three convictions are based on the same act, the theft of fuel from Hydro-Walk.
It is important to note that this ruling is strictly limited to the special circumstances presented by this case. Although we make no determination as to other issues raised by the defendant, we note that there is no transcript of the motion for new trial, post verdict judgment of acquittal, or the sentencing. Also, the defendant argues that his trial counsel had a conflict of interest in that he was paid by Sibley. This fact is not shown in the record and there is a possibility that the conflict may have been waived by the defendant. Further, we note that for some time, the defendant thought his trial attorney appealed the matter when, in fact, he *624 did not. Although we simply note these factors and arguments, when combined with the common factual basis for all three charges and the erroneous jury instructions, we find that special circumstances are presented in this case and the interest of justice requires that the convictions and sentences for all three offenses be vacated and the matter remanded for a new trial.
We find it unnecessary to rule on other issues raised on appeal by the defendant which are rendered moot by our action in vacating the convictions and sentences.

CONCLUSION
For the reasons stated above, we vacate the convictions and sentences of the defendant, Ronald W. Norman, on theft, illegal possession of stolen things and conspiracy to commit theft. We remand the matter for new trial.
VACATED AND REMANDED.